UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BRADFORD,

      Plaintiff,                            Case No. 19-cv-10395
                                                  Hon. Matthew F. Leitman

v.

COUNTY OF OAKLAND, *et al.*,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 17)

In this action, Plaintiff John Bradford alleges that four employees of the Oakland County Sheriff's Office – Defendants Gary Hembree, David Roddy, Robert Schultz, and Kelly Sexton[1] – violated the Fourth Amendment when they arrested him without probable cause and used excessive force against him. (*See* Compl., ECF No. 1.)  Bradford also brings a municipal liability claim against Defendant Oakland County under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). (*See id.*) Defendants have now moved for summary judgment on (1) Bradford's excessive force claims against Hembree, Schultz, and Sexton and (2) Bradford's claim that he

---

[1] Defendants Hembree, Schultz, Sexton, and Roddy are all law enforcement officers with the Oakland County Sheriff's Office.  Hembree and Shultz are deputies, Sexton is a lieutenant, and Roddy is a sergeant.  For ease of reference, the Court will refer to these Defendants collectively as the "officers" or the "Officer Defendants."

was arrested without probable cause. (*See* Mot. for Summ. J., ECF No. 17.)  For the reasons explained below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I**

**A**

This case arises from an incident that occurred at the Oakland County Fair on July 14, 2017. (*See* Bradford Dep. at 5, ECF No. 28-2, PageID.670.)  Bradford attended the Fair to watch his daughter participate in a vehicle racing event. (*See id*. at 12, PageID.672.)  Prior to his daughter's race, Bradford purchased a "pit pass" that allowed him to "come and go" through the grandstand and pit area during the event. (*Id.* at 14, PageID.672.)  The pass also allowed Bradford to "mingle with the [other] drivers." (*Id.*)

One of the other drivers participating in the race was a man named Alan Mahone. (*See id.* at 26, PageID.26, PageID.675.)  Bradford and Mahone had been friends for many years due to their joint participation in the racing community. (*See id.*)  While Bradford was in the pit area waiting for a pre-race meeting to begin, he heard Mahone shouting. (*See id.* at 28, PageID.676.)  Bradford then walked over to Mahone and learned that Mahone was upset because he was not being allowed to participate in the race. (*See id*.)  Bradford then spoke with Mahone for a few minutes without incident. (*See id*. at 32, PageID.678.)

2

After Bradford spoke with Mahone, Bradford joined his friends and stood next to the bleachers to watch the race. (*See id*. at 34, PageID.677.)   As Bradford watched the race, he was aggressively approached by Hembree. (*See id.* at 36, PageID.678.) Hembree pushed past Bradford's friends to get to Bradford and bumped Bradford with his chest.  (*See id*. at 36-37, PageID.678.)  Hembree then yelled, "[s]o you think you own this fucking place, don't you?" (*Id.* at 37, PageID.678.)  Bradford did not know what Hembree was talking about. (*See id.*)

Hembree was quickly joined by officers Schultz and Roddy. (*See id*. at 38-39, PageID.678.)  Hembree and Schultz then each grabbed one of Bradford's arms.  (*See id.* at 38, PageID.678.)  And Roddy wrapped his forearm around Bradford's neck. (*See id*.)  The crowd then yelled at the officers to release Bradford. (*See id.* at 39-40, 43, PageID.678-679.)   At that point, Hembree and Roddy released their hold on Bradford.  (*See id*. at 43, PageID.679.)

But Schultz did not let go of Bradford.  (*See id*.)  He continued to push Bradford toward the gate to exit the racing area. (*See id.* at 44, PageID.680.)  As he did so, he repeatedly yelled "[q]uit f-ing resisting, a-hole," and he "kept" twisting Bradford's arm up behind his (Bradford's) back. (*Id.*)  While Schultz continued to push Bradford, Bradford was trying to "walk[] like normal" and did not resist. (*Id.* at 44-45, PageID.680.)  And Bradford asked Schultz "[w]here do you want me to go? What do you want me to do?" (*Id.* at 45, PageID.680.)  In response, Schultz

continued to accuse Bradford of resisting and yelled profanities at him.  (*See id.*) Hembree then "lean[ed] into [Bradford's] ear and [said], '[g]uess what? We win, you lose.'" (*Id.* at 46, PageID.680.)  At that time, Bradford did not know why the officers had confronted him or why he was being pushed out of the racing area. None of the officers told him where he was being taken, or that he was under arrest. (*See id.* at 44-47, PageID.680.)

## B

The officers' conduct caused a commotion in the crowd, and bystanders began to record what was happening on their cellphones. (*See id.* at 46, PageID.680.)  A copy of one of these videos is included in the record. (*See* cellphone video recording, ECF No. 28-5.)  Shortly after the video begins, Roddy can be heard yelling at Bradford "[w]here is your car?" (*See id.* at 0:30; *see also* Bradford Dep. at 46, ECF No. 28-2, PageID.680.)  Bradford responded that he did not have a car because he had received a ride to the Fair. (*See id.* at 0:33; *see also* Bradford Dep. at 46, ECF No. 28-2.)  The recording then shows that out of nowhere, without any discernable movement from Bradford, Roddy yelled, "[d]on't fucking chest bump me." (*Id.* at 0:35.)  When Bradford replied that he did not do anything, Roddy hit him in the chest and grabbed him by the neck. (*See id*. at 0:35-0:41.)  Schultz then pulled Bradford's hands together and attempted to handcuff him.  (*See id*. at 0:49-1:05.)

4

At this point, Sexton, who had been in the vicinity of the interaction between Bradford and the other officers, began standing in front of the camera in an apparent effort to prevent any additional filming. (*See id.* at 0:49 – 1:05.)  Sexton also ordered the bystander to stop recording. (*See id.*)

## C

Hembree, Schultz, and Roddy then led Bradford to Hembree's squad car and instructed Bradford to "get in the car." (Bradford Dep. at 56-57, ECF No. 28-2, PageID.683.)   However, because Bradford was wearing handcuffs, and because Hembree's patrol car was an SUV, Bradford found it difficult to get through the tall car door. (*See id.*)   One officer instructed Bradford to "[j]ust fall backwards and slow," and Bradford attempted to comply with that command. (*Id.* at 57, PageID.683.)   But before Bradford could finish trying to enter the SUV, Hembree and Schultz grabbed Bradford's feet, shoved him into the SUV, and "slammed the [car] door on his legs." (*Id.*)   Hembree then drove Bradford to the front of the fairgrounds.

## D

Once Hembree reached the front of the fairgrounds, he and Schultz pulled Bradford out of the SUV. (*See id.* at 59, PageID.683.)   Schultz then shouted "[h]aven't you heard anybody f-ing swearing before? You haven't ever heard the F word?" (*Id.*)   Schultz then came up behind to Bradford, said "I want to make sure

5

these handcuffs are loose enough for you," and he "cranked [a set of cuffs] down as hard as he could." (*Id.* at 61, PageID.684.)  The handcuffs were so tight that Bradford audibly screamed out in pain and Bradford's hands began to swell.  (*See id.*; *see also id.* at 81, PageID.689.)

Bradford was subsequently transported to the Oakland County Jail, and he was charged with the misdemeanor offense of violating County Parks Sec. 13 – Violation of Personal Conduct Rules. (*See* Ticket, ECF Nos. 28-7.)

## E

As a result of the conduct of the Defendant Officers during the arrest, Bradford suffered several serious injuries.  When the SUV door was slammed on his legs, Bradford suffered a torn right knee ligament that required surgery. (*See* MRI, ECF No. 28-15).  In addition, after Schultz tightened Bradford's handcuffs, Bradford's hands swelled up so much that he could not move them.  The tightening of the cuffs aggravated Bradford's preexisting osteoarthritis and continues to cause Bradford regular pain. (*See* Bradford Dep. at 81, ECF No. 28-8, PageID.689; *see also* Medical Records, ECF No. 28-17.)

## II

Bradford filed this action against Hembree, Roddy, Schultz, Sexton, and Oakland County on February 7, 2019. (*See* Comp., ECF No. 1.)  The Complaint contains three counts.  In Count I, Bradford alleges that Hembree, Roddy, and

Schultz used excessive force against him. Bradford also alleges in Count I that Sexton failed to intervene to prevent the other Officer Defendants from using excessive force against him.  In Count II, Bradford claims that the Officer Defendants arrested and imprisoned him without probable cause.  Finally, in Count III, Bradford asserts that Oakland County is liable for the Officer Defendants' constitutional violations on the ground that it failed to properly train and/or supervise the Officer Defendants.

On January 16, 2020, Hembree, Schultz, Roddy, and Sexton filed a motion for partial summary judgment. (*See* Mot. for Summ. J., ECF No. 17.)  They seek judgment as a matter of law on (1) Bradford's excessive force claims against Schultz and Hembree in Count I; (2) Bradford's failure to intervene claim against Sexton in Count I; and (3) the false arrest claim against all of the Officer Defendants in Count II. (*See id*., PageID.73.)  Roddy did not seek summary judgment on the excessive force claim against him in Count I, and Oakland County did not seek summary judgment on the municipal liability claim in Count III.  The Court held a hearing on the motion on June 30, 2020.

### III

### A

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712

F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

## B

"Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).  Once raised, the "plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019).

The United States Court of Appeals for the Sixth Circuit "has generally used a two-step [qualified immunity] analysis: (1) viewing the facts in the light most favorable to the plaintiff, [a court] determines whether the allegations give rise to a constitutional violation; and (2) [the court] assesses whether the right was clearly established at the time of the incident." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014). The Court may answer these questions in any order, but "if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown*, 814 F.3d at 457. "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Indeed, "[o]n summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor." *Brown*, 814 F.3d at 457 (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).

## IV

The Court begins with Bradford's excessive force claim in Count I. For the reasons explained below, Schultz and Hembree are not entitled to summary judgment on this claim. However, the Court will grant Sexton summary judgment on Bradford's failure to intervene claim included in this Count.

## A

### 1

Defendants first argue that Schultz is entitled to summary judgment on Bradford's excessive force claim arising out of Schultz' alleged tightening of Bradford's handcuffs. (*See* Mot. for Summ. J., ECF No. 17, PageID.91-92.)  The Court disagrees.

"The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009).  "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing." *Id*.

Here, Bradford has offered sufficient evidence on each element of his handcuffing claim against Schultz.  First, he presented evidence that he audibly made a noise clearly indicating that he was in pain when Schultz tightened the cuffs. (*See* Bradford Dep. at 61, ECF No. 28-2, PageID.684.)  Second, Bradford testified that Schultz did not loosen or check the cuffs after he (Bradford) expressed that he was in pain.  On the contrary, Bradford testified that Schultz cranked the cuffs "as hard as he could" while sarcastically asking whether the cuffs were loose enough. (*Id*.)

Finally, Bradford presented evidence that he suffered physical injuries to his wrists from the excessively tight cuffing. (*See id.* at 81, ECF No. 28-8, PageID.689; *see also* Medical Records, ECF No. 28-17.)

Defendants counter that the cuffing claim against Schultz fails because Bradford's account of the cuffing is unambiguously contradicted by Schultz' in-car video. (*See* Mot. for Summ. J., ECF No. 17, PageID.92.)  But this video does not clearly reflect how Schultz locked the cuffs onto Bradford.  Nor does it capture the communications between Schultz and Bradford related to the tightness of the cuffs. Simply put, the video does not so conclusively refute Bradford's account of the cuffing that the Court may disregard his account and grant summary judgment in favor of Schultz.

Finally, Bradford's right to be free from excessively tight cuffing was clearly established at the time of his interaction with Schultz. *See Morrison*, 538 F.3d at 401.  For all these reasons, Schultz is not entitled to summary judgment on Bradford's handcuffing claim.

## 2

Defendants next argue that Schultz and Hembree are entitled to summary judgment with respect to Bradford's excessive force claims that arose out of (1) Bradford being placed into the back of Hembree's police car and (2) Schultz and

Hembree chest bumping Bradford and twisting Bradford's arm behind his back. (*See*

Mot. for Summ. J., ECF No. 28, PageID.  The Court disagrees.

These excessive force claims are evaluated under the following standard:

> [T]he right to be free from the excessive use of force is a
> clearly established Fourth Amendment right." *Champion
> v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir.
> 2004) (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th
> Cir. 2001)). The Supreme Court has explained that "[n]ot
> every push or shove, even if it may later seem unnecessary
> in the peace of a judge's chambers, violates the Fourth
> Amendment." *Graham v. Connor*, 490 U.S. 386, 396, 109
> S.Ct. 1865, 104 L.Ed.2d 443 (1989). Rather, "the question
> is whether the officers' actions [were] 'objectively
> reasonable' in light of the facts and circumstances
> confronting them, without regard to their underlying intent
> or motivation." *Id.* at 397, 109 S.Ct. 1865. "The calculus
> of reasonableness must embody allowance for the fact that
> police officers are often forced to make split-second
> judgments—in circumstances that are tense, uncertain,
> and rapidly evolving—about the amount of force that is
> necessary in a particular situation." *Id.* at 396, 109 S.Ct.
> 1865. Therefore, to determine whether the use of force in
> a particular situation was reasonable, this Court must look
> to the totality of the circumstances. *See id.*; *Dickerson v.
> McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996) (citing
> *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85
> L.Ed.2d 1 (1985)). In doing so, the court must assume "the
> perspective of a reasonable officer on the scene, rather
> than with the 20/20 vision of hindsight." *Graham*, 490
> U.S. at 396, 109 S.Ct. 1865. The analysis of whether an
> officer's use of force was reasonable is guided by the
> following three factors: (1) the severity of the crime at
> issue; (2) whether the suspect posed an immediate threat
> to the safety of the officers or others; and (3) whether the
> suspect was actively resisting arrest or attempting to evade
> arrest by flight. *Sigley v. City of Parma Heights*, 437 F.3d
> 527, 534 (6th Cir. 2006).

*King v. United States*, 917 F.3d 409, 429–30 (6th Cir. 2019).

Bradford has presented sufficient evidence to satisfy this standard at the summary judgment stage. For example, with respect to the leg injury he suffered, he has presented evidence that Hembree and Schultz shoved him into Hembree's patrol SUV, jammed his legs, and slammed the car door on his legs even though he did not resist in any way and posed no threat to the officers.

Defendants counter that Bradford's account of their conduct at the vehicle is conclusively refuted by video taken by the officers' in-car cameras. (*See* Mot. for Summ. J., ECF No. 17, PageID.93.) But as with Bradford's handcuffing claim, the identified videos do not clearly capture all relevant interactions between Bradford, Schultz, and Hembree and do not clearly reflect what happened as Bradford was being placed into the patrol vehicle and as the vehicle door closed. Thus, at this stage of the proceedings, the Court cannot discount Bradford's account based upon the videos. On the contrary, for purposes of this claim, viewing the evidence in the light most favorable to Bradford, the Court must conclude that the Hembree and Schultz (1) shoved Bradford into the vehicle and slammed his legs in the car door and (2) did so at a time when Bradford was neither resisting in any way nor posing any threat any of the officers. A jury could reasonably conclude that that conduct constitutes excessive force. *See*, *e.g.*, *Miller v. Sanilac Cty.*, 606 F.3d 240, 253-254 (6th Cir. 2010) (holding that "a jury could reasonably find that slamming an arrestee

into a vehicle constitutes excessive force when the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting"). *See also Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("Where there is no need for force, *any* force used is constitutionally unreasonable") (emphasis in original).  And Bradford had a clearly established right to be free from this force where he was not resisting and not posing a threat. *See*, *e.g.*, *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) ("[T]his circuit has [ ] concluded that, since at least 2009, the use of violence against a subdued and non-resisting individual has been clearly established as excessive force"); *Kijowski v. City of Niles*, 372 F. Appp'x 595, 601 (6th Cir. 2010) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right").  For all of these reasons, Schultz and Hembree are not entitled to summary judgment on the excessive force claim stemming from their actions in putting Bradford into Hembree's police vehicle.

Likewise, Schultz and Hembree are not entitled to summary judgment on Bradford's claims arising out of their bumping him with their chests and twisting his arms.  Bradford testified that Schultz and Hembree engaged in this conduct while he was not resisting in any way – in fact, while he was compliant with their orders – and while he did not pose a threat to the officers or others.  Under Bradford's version of events, this force was gratuitous and unreasonable.

Defendants respond that this force was merely *de minimis* and cannot as a matter of law support an excessive force claim.  In support of that contention, they rely upon the Sixth Circuit's decision in *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 524 (6th Cir. 2019). (*See* Mot. For Summ. J., ECF No. 17, Page ID.92-93.)  But in *Youkhanna*, the officers merely held the plaintiff's hand or arm and tapped the plaintiff.  The officers in *Youkhanna* thus applied far less force than Schultz and Hembree here, who Bradford describes as violently twisting his arm and aggressively chest bumping him.  And, again, Bradford had a clearly established right to be free from this unnecessary and violent force where he was not resisting and not posing a threat to the officers.

For all these reasons, Schultz and Hembree are not entitled to summary judgment on Bradford's excessive force claims.[2]

---

[2] As Defendants accurately note, the only example of excessive force that Bradford specifically identifies in his Complaint is excessively tight handcuffing. (*See* Comp. ECF No. 1, at PageID.4.)  However, Bradford pleads that the excessive force "includ[ed], *but [was] not limited to*" the handcuffing (*id*.; emphasis added), and he described the other force mentioned above in detail at his deposition.  The additional examples of allegedly excessive force should come as no surprise to Defendants at this stage of the case and were made known to Defendants during discovery.  Because the Complaint was not limited to tight handcuffing, and because Bradford identified the other examples of allegedly excessive force during discovery, the Court will permit Bradford to proceed with his claims that stem from force beyond the handcuffing.

**3**

Finally, Defendants argue that Sexton is entitled to summary judgment with respect to Bradford's claim that she failed to intervene to protect him from the force being applied by the other officers.  The Court agrees and grants Sexton summary judgment on this claim.

"Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  In order to show that an officer had the opportunity and means to prevent harm a plaintiff must show "that the incident lasted long enough for [the officer] to both perceive what was going on and intercede to stop it." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

Here, Bradford has failed to present sufficient evidence that Sexton had the means and opportunity to prevent the other officers from subjecting him to excessive force.  First, Bradford has not presented any evidence that Sexton witnessed or knew of the allegedly tight handcuffing and/or the force allegedly applied by Schultz and Hembree while Bradford was in or around Hembree's vehicle.  Second, Bradford has not demonstrated that the other applications of force – the allegedly violent chest bumping and arm twisting – lasted long enough for Sexton to perceive it and

intervene to stop the officers.  Moreover, the video of the incident reflects that for much of the relevant time, Sexton focused her attention on the growing crowd of spectators rather than on the interactions between the other officers and Bradford. For all of these reasons, Sexton is entitled to summary judgment on the failure to intervene claim in Count I of the Complaint.

**B**

The Court next turns to Bradford's claim that the Officer Defendants violated the Fourth Amendment when they arrested him without probable cause.[3]  For the reasons explained below, the Officer Defendants are not entitled to summary judgment on this claim.[4]

---

[3] In his response to Defendants' motion, Bradford argues at length that his initial seizure – that occurred before his arrest – was unlawful because it was not supported by reasonable suspicion. (*See* Resp. to Mot. for Summ. J., ECF No. 28, at PageID.658-60.)  But Bradford did not plead in his Complaint that his initial, pre-arrest seizure was unlawful.  In contrast to Bradford's excessive force claim – which did give Defendants at least general notice that it was based upon more than the specified tight handcuffing – nothing in the Complaint reasonably notified Defendants that Bradford was challenging his pre-arrest seizure.  Indeed, the wording of Count II is tied directly to Bradford's arrest and the probable cause standard for evaluating an arrest.  Accordingly, the Court will not permit Bradford to pursue a claim based upon the alleged pre-arrest seizure.

[4] It is not clear whether Bradford is asserting his unlawful arrest claim against Sexton.  If the claim is asserted against her, it fails as a matter of law.  Bradford has not presented sufficient evidence that she was personally involved in the decision to arrest him and/or in the arrest itself, nor has he presented sufficient evidence to support a claim that she failed to intervene to prevent an arrest that she knew to be unlawful.  For these reasons, if Count II is asserted against Sexton, the Court **GRANTS** summary judgment in her favor on that Count.

Probable cause exists where the "facts and circumstances within [an] officer's knowledge that are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed . . . an offense." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). Whether probable cause exists is an objective test. An arresting officer's state of mind is irrelevant in the inquiry. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

A law enforcement officer may be entitled to qualified immunity from a false arrest claim even where he lacked actual probable cause for an arrest. As the Sixth Circuit has explained, a "lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) (quotation omitted); *see also Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011) ("Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.").

Here, the Officer Defendants are not entitled to summary judgment because the evidence, viewed in the light most favorable to Bradford, establishes that they

both lacked probable cause to believe that Bradford committed a crime, and could not have reasonably (even if mistakenly) believed that he did so. According to Bradford, he never resisted the officers in any way, never attempted to make physical contact with them, and was fully compliant with their orders. Further, the video of the incident does not persuasively contradict Bradford's version of events. Taking Bradford's account as true, the Officer Defendants could not have reasonably concluded that Bradford committed any crime. Accordingly, the Officer Defendants are not entitled to summary judgment or qualified immunity on Bradford's false arrest claim.

Defendants insist that the Officer Defendants could reasonably have concluded that Bradford had chest bumped Roddy and, thus, that Bradford resisted and battered Roddy. But the Officer Defendants could not reasonably have concluded that Bradford committed a crime, if, as Bradford says, he (Bradford) plainly did not attempt to resist or chest bump Roddy. Simply put, the Officer Defendants could not reasonably have mistaken unambiguous compliance and non-resistance for a battery on Roddy. For all of these reasons, when the facts are taken in the light most favorable to Bradford (as they must be at this stage), the Officer Defendants are not entitled to qualified immunity on the basis that they could have reasonably, if mistakenly, concluded that Bradford committed a crime.

**V**

For the reasons explained above, Defendants' Motion for Summary Judgment (ECF No. 17) is:

- **GRANTED** in favor of Defendant Sexton on all the claims brought against her; and

- **DENIED** in all other respects.

This action shall proceed to trial on the following claims:

- The excessive force claims against Defendants Schultz, Hembree, and Roddy in Count I of the Complaint;

- The false arrest claims against Defendants Schultz, Hembree, and Roddy in Count II of the Complaint; and

- The municipal liability claim against Defendant Oakland County in Count III of the Complaint to the extent that the claim is based upon the constitutional violations by Defendants Schultz, Hembree, and Roddy alleged in Counts I and II of the Complaint.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 9, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 9, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764